**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CASE NO. 12-70013** |
| | ) | |
| **BRENDA KAY BROWN** | ) | **Chapter 7** |
| | ) | |
| | ) | |
| **DEBTOR** | ) | |
| _____ | ) | |
| | ) | |
| **JAMES WESTENHOEFER, CHAPTER 7 TRUSTEE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **ADV. PRO. NO. _____** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WHITEFORD TAYLOR PRESTON LLP** | ) | |
| **SEVEN SAINT PAUL STREET** | ) | |
| **BALTIMORE, MD 21202-1636** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **JAMES A. BROWN** | ) | |
| **By And Through his Conservator** | ) | |
| **RICHARD WEHRLE** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**<u>COMPLAINT</u>**

COMES NOW James Westenhoefer, the chapter 7 Trustee ("Mr. Westenhoefer" or the "Trustee") of the bankruptcy estate of Brenda Kay Brown (the "Estate"), by and through counsel, and hereby files this complaint (the "Complaint") against Whiteford Taylor Preston LLP ("WTP") and James A. Brown ("Mr. Brown"), by and through his conservator Richard Wehrle

(the "Conservator"). In support of the Complaint, Mr. Westenhoefer respectfully states as follows:

## PARTIES

1.      James Westenhoefer is the chapter 7 Trustee in Brenda Kay Brown's bankruptcy case, with his principal office located at 212 South Third Street, Richmond, KY 40475.

2.      Upon information and belief, Defendant WTP is a Maryland law firm with its principal place of business located at Seven Saint Paul Street, Baltimore, Maryland 21202.

3.      Defendant James A. Brown is Brenda Kay Brown's former husband and a resident of Cynthiana, Harrison County, Kentucky.

4.      Defendant Richard M. Wehrle, the Conservator, is a resident of Nicholasville, Jessamine County, Kentucky, a lawyer admitted to practice law in the Commonwealth of Kentucky and is a partner of the law firm, Stites & Harbison PLLC, with his principal office located at 250 West Main Street, Suite 2300, Lexington, Kentucky 40507.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157.  Venue is proper before this Court under 28 U.S.C. § 1409.

## BACKGROUND

**Brenda Kay Brown's Bankruptcy Case**

6.      On January 13, 2012 (the "Petition Date"), the Brenda Kay Brown (the "Debtor") filed a petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing a bankruptcy case styled *In re Brown*, Case No. 12-70013 (Bankr. E.D. Ky. January

13, 2013) (the "Bankruptcy Case").

7.     On March 22, 2012, by an agreed order and with the consent of the Debtor, the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code.

8.     On March 23, 2012, Mr. Westenhoefer was appointed Chapter 7 Trustee [Doc. No. 134].[1]   Under 11 U.S.C. §§ 541 and 1115, upon his appointment, the Trustee obtained ownership and control of all of pre and post-petition Estate property, including pre-conversion causes of action.

**The Conservator Action**

9.     The Debtor and Mr. Brown were married in February of 2008.   In December 2008, Mr. Brown suffered a stroke that left him unable to care for himself or manage his business affairs.

10.     After substantial misconduct by the Debtor against a disabled Mr. Brown and his property, on March 3, 2010, Richard Wehrle filed with the Harrison State Court (the "State Court") a petition for the appointment of an Emergency Conservator to manage Mr. Brown's financial affairs and to stop the Debtor from using her power of attorney to sell one of Mr. Brown's wholly owned properties, the Grand Haven Nursing Home through (the "Conservator Action").

11.     On March 8, 2010, at the conclusion of an emergency hearing, the State Court ordered from the bench that the nursing home not be sold, entered a status quo order, and scheduled a disability trial for May 13, 2010, to determine whether Mr. Brown was disabled and whether the appointment of a conservator or guardian was appropriate.   The State Court's orders

---

[1] Citations to document numbers herein ["Doc. No. XX"] refer to docket entries in the Bankruptcy Case unless otherwise noted.

are memorialized in an order dated March 16, 2010 (the "Status Quo Order"), which directed, inter alia, that "no personal or business assets owned by James A. Brown shall be transferred or disposed of," while permitting the expenditure of funds for reasonable and customary living expenses. *See* ¶ 4, Status Quo Order, attached hereto as **Exhibit A**. The Status Quo Order was endorsed as "HAVE SEEN" by then-counsel for the Debtor. *See Id*.

12.    On May 13, 2010, the jury in the Conservator Action unanimously found Mr. Brown totally disabled.  The Court appointed a temporary limited guardian for Mr. Brown, revoked the Debtor's alleged power of attorney over Mr. Brown, and ordered that the Status Quo Order remain in place until a permanent guardian could be appointed.

13.    On October 4, 2011, following a hearing for the appointment of a permanent guardian, Mr. Wehrle was appointed Conservator for Mr. Brown and Mr. Brown's brother, Paul Brown, was appointed health care Guardian by order of the State Court (the "Conservator Order").  The State Court rejected the Debtor as the conservator.  *See* Conservator Order, pp. 9-10, attached hereto as **Exhibit B**.

14.    Specifically, the State Court found that the Debtor improperly transferred assets, stating:

> The Court could go on and on about titles to cars owned by [Mr. Brown] being transferred with notaries not having actually witnessed him sign, about hundreds of thousands of dollars being apparently spent on remodeling or repairs but unidentified as to whether on [Mr. Brown's] house or [the Debtor's] house, about [the Debtor] taking stock distributions from corporations in which he had no ownership interest, numerous unidentified checks and wire transfers for large sums of money, and the unknown whereabouts of [Mr. Brown's] Rolex watch and diamond rings.  [The Debtor] has failed or refused to respond to most of the Court's requests for further information as related to her by the Temporary Limited Guardian, choosing instead to initiate litigation against the Temporary Limited Guardian.

*Id.* at p. 7.

15.    The Debtor's fraudulent misappropriation of Mr. Brown's assets did not stop after the entry of the Status Quo Order.  As set forth in the Conservator Order, the Debtor improperly took assets from Mr. Brown, in direct violation of the Status Quo Order, by:

a.    Purchasing, for $64,000.000 in cash, the Mercedes Benz listed as her legitimate property in her bankruptcy schedules. Conservator Order at ¶2g; and

b.    Redeeming a Certificate of Deposit in the amount of $524,966.37 and depositing those proceeds in an unknown bank account. Conservator Order at ¶2i.

16.    The Debtor, with advice of counsel, subsequently agreed not to appeal the Conservator Order.

**Defendant WTP's Retention in the Bankruptcy Case**

17.    Upon information and belief, on or about November 17, 2011, Defendant WTP commenced its representation of the Debtor.  Defendant WTP was brought into this case by Erik Bolog of the Bolog Firm ("Bolog") and Sandra Spurgeon of Spurgeon & Tinker PSC ("S&T" and together with Defendant WTP and Bolog, "Debtor's Bankruptcy Counsel").

18.    Upon information and belief, Defendant WTP reviewed the State Court record of the Conservator Action and had, or should have had, actual knowledge of the entry of the Conservator Order and the Debtor's voluntary waiver of her right to appeal the Conservator Order.

19.    Upon information and belief, WTP had a long-standing relationship with Bolog even prior to its representation of the Debtor in connection with the Bankruptcy Case. To name a few, as early as 2009, Defendant WTP represented M Y New Hampshire LLC and Erik Bolog (General Counsel of M Y New Hampshire LLC) in connection with a significant Chapter 11 case in the U.S. District Court for the District of Columbia (the "Bolog DC Case"). *See* Bolog DC

Case cover sheet, attached hereto as **Exhibit C**.

20.     Likewise, upon information and belief, Erik Bolog was co-counsel with Defendant WTP on a number of other matters.

21.     As described in more detail herein, Defendant WTP failed to disclose this *known* ongoing relationship with Bolog, as mandated by the Bankruptcy Code, in any of the disclosures filed with this Court

**Source of Retainer Payment to Debtor's Bankruptcy Counsel**

22.     Upon information and belief, on or about November 21, 2011 (four days after Defendant WTP began its representation of the Debtor), the Debtor transferred $377,760.34 to her brother, Roger L. Kirk ("Mr. Kirk").  Mr. Kirk also received several smaller transfers from the Debtor in the weeks leading up to the Petition Date, making a total of $417,414.43 in transfers (collectively, the "Pre-Petition Transfers").

23.     On December 7, 2011, the Debtor granted a mortgage (the "Mortgage") on her home in Paintsville, Kentucky in the amount of $300,000 in favor of Bolog, S&T and Greenberg Traurig LLP ("GT").

24.     Upon information and belief, originally, GT was to act as primary counsel for the Debtor in connection with her Bankruptcy Case and was ultimately replaced by Defendant WTP.

25.     Upon information and belief, GT had serious reservations about the factual and legal basis underlying both the Bankruptcy Case and the adversary proceeding styled *Brown v. Wehrle et. al.*, Adversary Proceeding No. 12-7004 (E.D. Ky. January 24, 2012), filed by Debtor's Counsel on behalf of the Debtor (the "WTP AP").

26.     On or about January 11, 2012, Mr. Kirk transferred $175,647.12 of the Debtor's

funds *back* to the Debtor by money order.

27.    On or about January 23, 2012, ten days after the Petition Date, the Debtor

transferred $175,647.12 *back* to Mr. Kirk by money order and without Court authorization (the

"Money Order Transfer").

28.    Upon information and belief, the Pre-Petition Transfers and the Money Order

Transfer were made by the Debtor to, and accepted by, Mr. Kirk so that he could secretly hold

the proceeds of these transfers for the Debtor in order to hide these assets and/or defraud the

Debtor's creditors.

29.    On or about January 11, 2012, GT's interest in the Mortgage was assigned to

Defendant WTP.

30.    On or about January 12, 2012, the Mortgage was released by GT or by Defendant

WTP.

**Defendant WTP's Failure to Disclose**

31.    On January 13, 2012, Defendant WTP filed its application for employment as

Debtor's counsel in the Bankruptcy Case (the "Initial Application") [Doc. No. 6].

32.    The Initial Application was accompanied by a sworn declaration of Paul

Nussbaum, who was also one of the attorneys of record in the Bolog DC Case (the "Initial

Declaration").

33.    The Initial Application stated that Defendant WTP had received a Retainer

Payment from the Debtor in the amount of $50,000.00 and had, "drawn down on the Retainer

Payment prior to the filing of the bankruptcy petition for services associated with preparing for

this chapter 11 case." *See* Initial Application at ¶ 23.

7

34.     Further, the Initial Application stated that Defendant WTP would act primarily as supporting "Litigation" counsel with Bolog as Lead Counsel. *See Id.* at ¶ 15.    The Initial Application also indicated that Defendant WTP would "render advice and assistance with other aspects of this chapter 11 case." *See Id.*

35.     The Initial Declaration stated that Defendant WTP had received $50,000.00 from the Debtor (the "Retainer Payment") as security "for its legal services," but failed to disclose whether any or how much of the $50,000.00 had been applied to pre-petition bills. *See* Initial Declaration, Exhibit A, ¶ 7.

36.     In its initial disclosure of compensation (the "Initial Compensation Disclosure"), filed with the Initial Application, Defendant WTP stated that it had received the Retainer Payment and that, on January 13, 2012 (the Petition Date), "prior to the filing of the Debtor's bankruptcy petition," it had drawn down $26,500.00 of the Retainer Payment. *See* Initial Application, Exhibit C.

37.     Defendant WTP failed to disclose, in both the Initial Application and the Initial Declaration, that the Retainer Payment was made directly out of the Pre-Petition Transfer funds, held by Mr. Kirk but owned by the Debtor, or that it had been assigned and released the Mortgage.

38.     Despite the prior *known* relationship and connections with Bolog, Defendant WTP made the false statement in the Initial Application that it had no connections with the Debtor, the Debtor's Creditors, any other party in interest and their respective attorneys and accountants. *See* Initial Application at ¶ 17.

39.     The same false representation was made by Paul Nussbaum in the Initial

Declaration, even though Paul Nussbaum was one of the attorneys of record in the Bolog DC Case and had *actual* knowledge of WTP's prior relationship with Bolog. *See* Initial Application, Exhibit A.

40.     On January 25, 2012 the U.S. Trustee filed an objection to Defendant WTP's Initial Application (the "UST Objection") [Doc. No. 28].

41.     On January 27, 2012, Defendant WTP filed on behalf of the Debtor, the Debtor's initial schedules and statement of financial affairs in the Bankruptcy Case (the "Initial Schedules") [Doc. No. 32].  The Initial Schedules contained false information and misrepresentations, including, but not limited to, a failure to disclose any of the Pre-Petition Transfers or any of Debtor's other assets being held by Mr. Kirk and misrepresentations regarding Debtor's pre-petition bank accounts.

42.     Defendant WTP had a duty to investigate the Debtor's financial affairs as they related to the Initial schedules.  Upon information and belief, as Debtor's Counsel had Debtor's bank records in their possession before the Petition Date, and Defendant WTP knew or should have known that the Initial Schedules were false and incomplete.

43.     On February 6, 2012, to provide additional information regarding its employment as consideration for withdrawal of the UST Objection, Defendant WTP filed an amended application for employment (the "Second Application") [Doc. No. 41] and a stipulation and consent order (the "Stipulation") [Doc. No. 38]. The Second Application was supported by a second sworn declaration by Paul Nussbaum (the "Second Declaration").

44.     In the Second Application, Defendant WTP stated it received the Retainer Payment from the Debtor and that it drew down $26,500.00 of the Retainer Payment prior to the

Petition Date.  *See* Second Application at ¶ 26.

45.    Identical to the Initial Declaration, Paul Nussbaum made the same false statement in the Second Declaration that Defendant WTP "thus far identified no connection with the Debtor, the Debtor's Creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee" despite its longstanding *known* relationship with Bolog and M Y New Hampshire LLC. *See* Initial Application, Exhibit A at ¶ 4.

46.    All of Defendant WTP's declarations and applications failed to disclose any information regarding the existence and purpose of the Mortgage, of any underlying note with the Debtor, of any release or assignment of the same, or of the nature or source of the Retainer Payment.

47.    Defendant WTP's February 6, 2012 filings were prepared by Defendant WTP and included two affidavits executed under penalty of perjury by the Debtor (the "Debtor's Affidavit") and Mr. Kirk (the "Kirk Affidavit") [Doc. No. 38-1].

48.    In Debtor's Affidavit, the Debtor stated under oath (collectively, the "Debtor Statements") that:

    a.    she first contacted Defendant WTP in November of 2011 to potentially represent her in state court litigation;

    b.    on November 21, 2011 (the date of the Pre-Petition Transfer), she met with Defendant WTP where Mr. Kirk delivered a check as a Retainer Payment for the Debtor's legal services;

    c.    on December 5, 2011, Mr. Kirk wired $150,000 to the Debtor;

    d.    on December 5, 2011, the Debtor paid $150,000 to local co-counsel of Defendant, which was to be used as a Retainer Payment for Defendant WTP and for other attorneys' services to be used for "legal services necessary for the preparation of this Chapter 11 bankruptcy filing;"

10

e.      the funds used for the Retainer Payment did not come from either the Debtor's assets or the assets of Mr. Brown, either directly or indirectly

49.     In Kirk's Affidavit, Mr. Kirk stated under oath (collectively, the "Kirk Statements") that:

a.      Defendant WTP provided the Debtor with an estimate of fees and expenses of the Debtor's Counsel;

b.      Kirk provided the Debtor with $190,000 for Retainer, plus another $25,000.00 for unknown purposes; and

c.      none of the funds he provided to the Debtor came directly or indirectly from the assets of the Debtor or of Mr. Brown.

50.     Defendant WTP failed to disclose the source of the Retainer Payment, as evidenced by the Debtor and Kirk Statements, in its Initial Application or Declaration or its Second Application or Declaration.

51.     On February 10, 2012, the Brown Parties (defined below) joined the U.S. Trustee's objections to Defendant WTP's Second Application and included additional objections to Defendant WTP's misrepresentations in the Initial and Second Applications.

52.     On February 24, 2012, the Debtor's meeting of creditors under 11 U.S.C. § 341 was held in the Bankruptcy Case (the "341 Meeting").

53.     At the 341 Meeting, Bolog and S&T instructed the Debtor not to answer any questions concerning her payment of compensation and/or Retainer Payment to Defendant WTP and her other counsel (the "Compensation Questions"). Subsequently, this Court found that these instructions were improper. *See* Order Granting Motion to Compel [Doc. No. 123] and Order on Sanctions [Doc. No. 201].

54.     On March 8, 2012, the Brown Parties filed a Motion to Compel the Debtor to answer questions and produce documents (the "Motion to Compel") [Doc. No. 85] concerning

the Debtor's connections and transfers to Defendant WTP.

55.    On March 8, 2012, the Debtor filed amended schedules and an amended statement of financial affairs in the case (the "Amended Schedules") [Doc. No. 86].

56.    In the Amended Schedules, the Debtor first revealed that Mr. Kirk was "holding" over $377,000.00 of the Debtor's liquid assets.  None of Debtor's Counsel took any action to secure this property for the Estate.  The Amended Schedules also falsely stated that the Debtor's records concerning transfers in the ninety (90) days immediately preceding the Petition Date were "not available to the Debtor" when Debtor's Counsel had (or had access to) all such records.

57.    On March 14, 2012, Debtor's Counsel received the un-redacted bank statements of Mr. Kirk, showing the Pre-Petition Transfers confirming that the Debtor, through primarily the CD Transfer, was the true source of the funds used for the Retainer Payment.

58.    On March 15, 2012, Debtor's Counsel filed the Debtor's Opposition to the Motion to Compel (the "Opposition") [Doc. No. 104].

59.    In the Opposition, Defendant WTP admitted that, contrary to the sworn Declarations submitted by Paul Nussbaum, Defendant WTP "specifically requested that the Retainer Payment funds come from a source other than the assets of the Debtor and/or her husband . . . ." *See* Opposition, n.6.  Defendant WTP's statement is directly contrary to the sworn Declarations of Paul Nussbaum made in support of the Initial and Second Application of Defendant WTP, stating that the Debtor was the source of the Retainer Payment.

60.    Shortly thereafter, during the March, 2012 deposition of Mr. Kirk, Mr. Kirk invoked his Fifth Amendment right against self-incrimination when asked about bank

transactions reflecting the Pre-Petition Transfers and Retainer Payment.

61.     Despite having knowledge of the facts described above, on March 21, 2012, Defendant WTP, along with S&T and Bolog, submitted Mr. Kirk's amended affidavit [Doc. No. 122], which restated that the monies used for the Retainer Payment were neither the property of the Debtor nor of her husband Mr. Brown.

62.     On March 22, 2012, the Court entered an Order granting the Motion to Compel and found no merit to Defendant WTP's position in the Opposition. *See* Doc. No. 123. In fact, the Court even sanctioned Bolog and S&T for opposing the Motion to Compel. *See* Doc. No. 201.

63.     Likewise, despite having knowledge of the facts described above, on April 6, 2012, Defendant WTP filed its required Disclosure of Compensation pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Disclosure") [Doc. No. 155].  Defendant WTP maintained its false representations in the Disclosure and stated that the Retainer Payment came from a loan from Mr. Kirk and not from the property of the Debtor or of her husband Mr. Brown. *See* Disclosure at ¶ 14.

**Defendant WTP's Motion to Withdraw As Debtor's Counsel**

64.     On April 6, 2012, Defendant WTP filed a motion to withdraw as Debtor's attorney (the "Withdrawal Motion") [Doc. No. 148].

65.     On April 7, 2012, the Court allowed Defendant WTP to withdraw as counsel for the Debtor, finding that the Withdrawal Motion was moot (the "Withdrawal Order") [Doc. No. 170].  The Withdrawal Order was a companion to the Court's earlier order, dated April 4, 2012, overruling the Brown Parties' Objection to the Debtor's Withdrawal of the Initial and Second Applications and finding that the Retainer Payment paid to Defendant WTP was property of the

Estate and subject to turnover [Doc. No. 150]  (the "Turnover Order").

66.     Upon information and belief, Defendant WTP knowingly and willfully failed to disclose the Mortgage, its assignment and subsequent release, any underlying note or fee agreement with the Debtor related to the Mortgage, and the funding sources of its Retainer Payment, filed false or misleading employment applications through its deliberate misrepresentations of its connections with other counsel in an effort to be retained as counsel for the Debtor, and attempted to earn fees from the litigation of the meritless WTP AP.  *See* Order Granting Motion to Approve Settlement [Doc. No. 281]; Order Sustaining Objection to Exemptions [Doc. No. 303]; and Order Granting Trustees Show Cause Motion [Doc. No. 441]. *See also* Memorandum Opinion and Order affirming Settlement Order, U.S. District Court for the Eastern District of Kentucky, Case No. 7:12-CV-00110, Doc. No. 8.

67.     Further, upon information and belief, Defendant WTP provided no value to the Estate through its work in the Bankruptcy Case, thus improperly retaining legal fees in excess of the amount required for the services it provided, to the detriment of Debtor's creditors in the Bankruptcy Case.

## COUNTS AGAINST MR. BROWN, THROUGH THE CONSERVATOR

## COUNT I

### Declaratory Action Against Mr. Brown, through the Conservator, Regarding Property of Debtor's Estate

68.     The Trustee repeats, realleges and incorporates by reference the allegations contained in numerical paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     Prior to the Petition Date, all assets in the Debtor's control constituted her property, as no constructive trust had been imposed on them, and any Retainer Payment paid by

Debtor to Defendant WTP constituted property of the Estate.

70.     No court had imposed a constructive trust on or otherwise determined that the assets in the Debtor's control were property of any party, including Mr. Brown, through the Conservator, other than the Debtor prior to the filing of the Bankruptcy Case.

71.     On January 24, 2012, the Debtor filed an adversary proceeding against the Conservator and other related parties (the "Brown Parties"), styled *Brenda Kay Brown v. Richard Wehrle, et. al.*, Adversary Proceeding No. 12-07004 (the "AP"). When the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code, the Trustee became a party in interest in the AP.

72.     After the Trustee investigated the underlying facts of the Bankruptcy Case, the AP and the underlying facts and the record of the Conservator Action, the Trustee concluded that the AP had no merit or value to the Estate and entered into a settlement agreement with the Brown Parties (the "Settlement Agreement"). The Settlement Agreement was approved by this Court on August 24, 2012.

73.     Pursuant to the Settlement Agreement, the Parties stipulated and the Court determined as part of approving the Settlement Agreement, that the Debtor's assets subject to recovery by the Trustee as avoidance actions under Chapter 5 of the Bankruptcy Code were property of the estate.

74.     Out of an abundance of caution, the Trustee seeks a declaration that the property underlying the avoidance actions such as alleged in this Complaint are property of Debtor's estate and that the Trustee is entitled to all recoveries under such avoidance actions.

## COUNTS AGAINST DEFENDANT WTP

### COUNT II

**Breach of Fiduciary Duty Under 11 U.S.C. §§ 327**

75.     The Trustee repeats, realleges and incorporates by reference the allegations contained in numerical paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.     Pursuant to 11 U.S.C. § 327, attorneys for a debtor in a Chapter 11 bankruptcy case owe a fiduciary duty to the bankruptcy estate and to the debtor's creditors.  Therefore, Defendant WTP, at all relevant times, owed a fiduciary duty to the Estate and Debtor's creditors.

77.     Pursuant to Bankruptcy Rule of Procedure 2014, Defendant WTP was required to fully disclose all connections with the Debtor, including all information about its Retainer Payment and transfers made by the Debtor to it as well as its legal and business connections with other professionals of the Debtor.

78.     Pursuant to Bankruptcy Rule of Procedure 2016 and 11 U.S.C. § 329, Defendant WTP was required to fully disclose all compensation paid or promised to be paid to it.

79.     Defendant WTP breached its fiduciary duty to the Estate and violated Bankruptcy Rule 2014 by failing to fully disclose the nature and source of its Retainer Payment and its connections with the Debtor and other Debtor professionals.

80.     Defendant WTP breached its fiduciary duty to the Estate by knowingly filing false Applications and Declarations concerning its connection with other parties as required by Bankruptcy Rule of Procedure 2014, including, but not limited to, stating it had "identified no connections with the Debtor, the Debtor's creditors, any other party in interest, their respective attorneys and accountants . . .," when WTP had a long-standing relationship with Bolog and Paul

16

Nussbaum represented Bolog in the Bolog DC Case.

81.     Defendant WTP breached its fiduciary duty by failing to fully disclose all compensation paid or promised to be paid to it in violation of Bankruptcy Rule of Procedure 2016 and 11 U.S.C. § 329.

82.     Defendant WTP breached its fiduciary duty to the Estate by failing to take steps to preserve the Pre-Petition Transfers which were property of the Estate.

83.     Defendant WTP breached its fiduciary duty to the Estate by filing the WTP AP, ultimately determined to be meritless, when it knew, or should have known, that there was no basis for the WTP AP.

84.     As a direct and proximate result of Defendant WTP's actions described above and its continued refusal to cooperate with the Trustee, the Debtor's creditors were harmed. Moreover, Debtor's creditors continue to be harmed by Defendant WTP's improper withholding of the Retainer Payment from the Estate, failure to turn over its legal files and the Retainer Payment and being the cause of the additional costs that the Estate continues to incur.

## COUNT III

### Turnover of Property of the Debtor Under 11 U.S.C. §§ 541-542

85.     The Trustee repeats, realleges and incorporates by reference the allegations contained in numerical paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.     Under 11 U.S.C. § 541, property of a bankruptcy estate includes all "legal and equitable interest of the Debtor in property as of the commencement of the case."

87.     As of the commencement of the case, the Estate held all legal and equitable interest in the Pre-Petition Transfers and the Retainer Payment.

88.     The Retainer Payment is property of the Estate under 11 U.S.C. § 541 as previously determined by this Court [Doc No. 150].

89.     All documents and other evidence relating to the Debtor or to the Bankruptcy Case (wherever generated) in Defendant WTP's possession (the "Debtor Files") are property of the Estate under 11 U.S.C. § 541.

90.     Under § 542, "any entity . . . in possession or control of property" of the Estate must "deliver to the trustee, and account for, such property or the value of such property."

91.     Based on the foregoing, the Debtor Files and Retainer Payment (or their value), must be turned over to the Trustee by Defendant WTP. Therefore, this Court should enter an order: (i) granting judgment against Defendant WTP in an amount not less than the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees; (ii) determining that the Retainer Payment and Debtor Files are property of the Estate; (iii) ordering Defendant WTP to turn over the Retainer Payment and Debtor Files to the Trustee immediately; and (iv) imposing a constructive trust on all of Defendant WTP's assets in the amount of $50,000.00 in favor of the Trustee pending return of the Retainer Payment..

## COUNT IV

**Conversion of the Debtor Files and Retainer Payment**

92.     The Trustee repeats, realleges and incorporates by reference the allegations contained in numerical paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.     Defendant WTP, by accepting the Retainer Payment and retaining Debtor Files as described more specifically above, wrongfully converted and transferred property of the Estate to

itself and to other parties.

94.    The Estate and its creditors suffered damages as a result of Defendant WTP's conversion of its property and the Trustee is entitled to a judgment against Defendant WTP in an amount to be determined by the evidence at trial, which should be no less than the amount of the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees, and sanctions and punitive damages, if appropriate.

## COUNT V

**Avoidance and Recovery of Fraudulent
Transfers Under 11 U.S.C. §§ 544, 550 and KRS 378.020**

95.    The Trustee repeats, realleges and incorporates by reference the allegations contained in numerical paragraphs 1 through 94 of this Complaint as if fully set forth herein. Counts V through X are pled in the alternative to Counts II and III.

96.    Pursuant to 11 U.S.C. §§ 544 and 550, a trustee and/or debtor in possession may avoid any transfer or obligation and recover the value of any transfer of an interest of a debtor in property, that is voidable under applicable law by a creditor holding an unsecured claim.

97.    An actual creditor of the Debtor and/or Estate exists or existed at the Petition Date who could avoid the Pre-Petition Transfers.

98.    The Retainer Payment made by the Debtor constitutes a transfer of interest of the Debtor in property.

99.    Given Defendant WTP's failure to properly represent the interests of the Estate and the Debtor, neither the Estate nor the Debtor received valuable consideration in exchange for the Retainer Payment.

100.    Pursuant to 11 U.S.C. §§ 544, 550 and KRS 378.020, the Debtor is entitled to recover from Defendant WTP the amount of the Retainer Payment for the benefit of the Debtor and her creditors.

101.    Based upon the foregoing, the Retainer Payment constitutes an avoidable fraudulent transfer pursuant to § 544 of the Bankruptcy Code. Therefore, pursuant to § 550 (a) of the Bankruptcy Code, this Court should enter an order: (i) granting judgment against Defendant WTP in an amount not less than the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees; (ii) determining that the Retainer Payment is property of the Estate; (iii) avoiding the Retainer Payment pursuant to Bankruptcy Code § 544; and (iv) directing Defendant WTP to turn over and pay such sum to the Trustee pursuant to Bankruptcy Code § 550(a).

## COUNT VI

### Avoidance and Recovery of Fraudulent Transfers
### Under 11 U.S.C. §§ 548(a)(1)(A) and 550

102.    The Trustee repeats, realleges and incorporates by reference the allegations contained in numerical paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103.    On or within two years before the Petition Date, the Debtor made the Retainer Payment.

104.    The Retainer Payment constitutes a transfer of interest in the Debtor's property and/or obligations incurred by the Debtor.

105.    The Retainer Payment was made with the actual intent to hinder, delay, or defraud any entity to which the Debtor was or became indebted on or after the date that the Retainer Payment was made.

106.    Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550, the Estate is entitled to recover from Defendant WTP the amount of the Retainer Payment for the benefit of the Estate and its creditors.

107.    Based upon the foregoing, the Retainer Payment constitutes an avoidable fraudulent transfer pursuant to § 548 of the Bankruptcy Code and pursuant to § 550(a) of the Bankruptcy Code. Therefore, this Court should enter an order: (i) granting judgment against Defendant WTP in an amount not less than the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees; (ii) determining that the Retainer Payment is property of the Estate; (iii) avoiding the Retainer Payment pursuant to Bankruptcy Code § 548; and (iv) directing Defendant WTP to turn over and pay such sum to the Trustee pursuant to Bankruptcy Code § 550(a).

## COUNT VII

### Avoidance and Recovery of Preferential
### Transfers Under 11 U.S.C. §§ 547 and 550

108.    The Trustee repeats, realleges and incorporates by reference the allegations contained in numerical paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.    On or within 90 days before the Petition Date, the Debtor made, or caused to be made, the Retainer Payment to or for the benefit of Defendant WTP.

110.    Defendant WTP was, at the time of the Retainer Payment, an insider of the Debtor.

111.    The Retainer Payment constitutes a transfer of interest in the Debtor's property.

112.    The Debtor made, or caused to be made, the Retainer Payment to, or for the benefit of Defendant WTP, who was a creditor of the Debtor.

113.    The Debtor made, or caused to be made, the Retainer Payment  for, or on account of, antecedent debt(s) owed to Defendant WTP prior to the dates on which the Retainer Payment was made (the "Debt").

114.    The Debtor was insolvent at the time the Retainer Payment was made.

115.    The Retainer Payment enabled Defendant WTP to receive more than it would have received if:  (i) this case was administered under Chapter 7 of the Bankruptcy Code; (ii) the Retainer Payment had not been made; and (iii) Defendant WTP had received payment of the Debt to the extent provided by the Bankruptcy Code.

116.    Pursuant to 11 U.S.C. §§ 547 and 550, the Estate is entitled to recover from Defendant WTP the amount of the Retainer Payment for the benefit of the estate and its creditors.

117.    Based upon the foregoing, the Retainer Payment constitutes an avoidable preferential transfer pursuant to § 547(b) of the Bankruptcy Code. Therefore, pursuant to § 550 (a) of the Bankruptcy Code, this Court should enter an order: (i) granting judgment against Defendant WTP in an amount not less than the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees; (ii) determining that the Retainer Payment is property of the Estate; (iii) avoiding the Retainer Payment pursuant to Bankruptcy Code § 547(b); and (iv) directing Defendant WTP to turn over and pay such sum to the Trustee pursuant to Bankruptcy Code § 550(a).

## COUNT VIII

**Avoidance and Recovery of Fraudulent
Transfers Under 11 U.S.C. §§ 548(a)(1)(B)(ii)(I) and 550**

118.    The Trustee repeats, realleges and incorporates by reference the allegations

contained in numerical paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119.    On or within two years before the Petition Date, the Debtor made, or caused to be made or incurred, the Retainer Payment.

120.    The Retainer Payment constitutes a transfer of interest in the Debtor's property.

121.    Given Defendant WTP's failure to properly represent the interests of the Estate and the Debtor, the Estate and the Debtor received less than a reasonably equivalent value in exchange for the Retainer Payment.

122.    The Debtor was insolvent on the dates the Retainer Payment was made or became insolvent as a result of the Retainer Payment.

123.    Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, the Trustee is entitled to recover from Defendant WTP the amount of the Retainer Payment for the benefit of the Estate and its creditors.

124.    Based upon the foregoing, the Retainer Payment constitutes an avoidable fraudulent transfer pursuant to § 548 of the Bankruptcy Code. Therefore, pursuant to § 550 (a) of the Bankruptcy Code, this Court should enter an order: (i) granting judgment against Defendant WTP in an amount not less than the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees; (ii) determining that the Retainer Payment is property of the Estate; (iii) avoiding the Retainer Payment pursuant to Bankruptcy Code § 548; and (iv) directing Defendant WTP to turn over and pay such sum to the Trustee pursuant to Bankruptcy Code § 550(a).

## COUNT IX

**Avoidance and Recovery of Fraudulent
Transfers Under 11 U.S.C. §§ 548(a)(1)(B)(ii)(II) and 550**

125.    The Trustee repeats, realleges and incorporates by reference the allegations contained in numerical paragraphs 1 through 124 of this Complaint as if fully set forth herein.

126.    On or within two years before the Petition Date, the Debtor made, or caused to be made or incurred the Retainer Payment.

127.    The Retainer Payment constitutes a transfer of interests in Estate's property.

128.    Given Defendant WTP's failure to properly represent the interests of the Estate and the Debtor, the Estate and the Debtor received less than a reasonably equivalent value in exchange for the Retainer Payment.

129.    Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, the Trustee is entitled to recover from Defendant WTP the amount of the Retainer Payment for the benefit of the Estate and its creditors.

130.    Based upon the foregoing, the Retainer Payment constitutes an avoidable fraudulent transfer pursuant to § 548 of the Bankruptcy Code. Therefore, pursuant to § 550 (a) of the Bankruptcy Code, this Court should enter an order: (i) granting judgment against Defendant WTP in an amount not less than the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees; (ii) determining that the Retainer Payment is property of the Estate; (iii) avoiding the Retainer Payment pursuant to Bankruptcy Code § 548; and (iv) directing Defendant WTP to turn over and pay such sum to the Trustee pursuant to Bankruptcy Code § 550(a).

## COUNT X

**Avoidance and Recovery of Fraudulent
Transfers Under 11 U.S.C. §§ 548(a)(1)(B)(ii)(III) and 550**

131.    The Trustee repeats, realleges and incorporates by reference the allegations contained in numerical paragraphs 1 through 130 of this Complaint as if fully set forth herein.

132.    On or within two years before the Petition Date, the Debtor made, or caused to be made, the Retainer Payment.

133.    The Retainer Payment constitutes a transfer of interest in Debtor's property.

134.    Given Defendant WTP's failure to properly represent the interests of the Estate and the Debtor, the Estate and the Debtor received less than a reasonably equivalent value in exchange for the Retainer Payment.

135.    At the time the Retainer Payment was made, the Debtor intended to incur, or believed that she would incur, debts that would be beyond her ability to pay as such debts matured.

136.    Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, the Trustee is entitled to recover from Defendant WTP the amount of the Retainer Payment for the benefit of the Estate and its creditors.

137.    Based upon the foregoing, the Retainer Payment constitutes an avoidable fraudulent transfer pursuant to § 548 of the Bankruptcy Code. Therefore, pursuant to § 550 (a) of the Bankruptcy Code, this Court should enter an order: (i) granting judgment against Defendant WTP in an amount not less than the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees; (ii) determining that the Retainer Payment property of the Estate; (iii) avoiding the Retainer

25

Payment pursuant to Bankruptcy Code § 548; and (iv) directing Defendant WTP to turn over and

pay such sum to the Trustee pursuant to Bankruptcy Code § 550(a).

**COUNT XI**

**Avoidance and Recovery of Preferential Conveyances
Under 11 U.S.C. §§ 544, 550 and KRS 378.020**

138.    The Trustee repeats, realleges and incorporates by reference the allegations

contained in numerical paragraphs 1 through 137 of this Complaint as if fully set forth herein.

139.    Pursuant to 11 U.S.C. §§ 544 and 550, a trustee and/or debtor in possession may

avoid any transfer or obligation and recover the value of any transfer of an interest of the Debtor

in property, that is avoidable under applicable law by a creditor holding an unsecured claim.

140.    An actual creditor exists or existed at the Petition Date who could avoid any of

the Retainer Payment.

141.    The Retainer Payment made by the Debtor to Defendant WTP constituted a

transfer of interest of the Debtor in property.

142.    The Retainer Payment was made by the Debtor, "in contemplation of insolvency

and with design to prefer one or more creditors to the exclusion, in whole or in part, of others."

143.    Pursuant to 11 U.S.C. §§ 544, 550 and KRS 378.060, the Trustee is entitled to

recover from Defendant WTP the amount of the Retainer Payment for the benefit of the Estate

and its creditors.

144.    Based upon the foregoing, the Retainer Payment constitutes an avoidable

fraudulent transfer pursuant to § 544 of the Bankruptcy Code. Therefore, pursuant to § 550 (a) of

the Bankruptcy Code, this Court should enter an order: (i) granting judgment against Defendant

26

WTP in an amount not less than the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees; (ii) determining that the Retainer Payment is property of the Estate; (iii) avoiding the Retainer Payment pursuant to Bankruptcy Code § 544; and (iv) directing Defendant WTP to turn over and pay such sum to the Trustee pursuant to Bankruptcy Code § 550(a).

## RESERVATION OF RIGHTS

145.    The Trustee reserves the right to amend this Complaint and/or bring all other claims or causes of action that the Trustee might have against all Defendants, on any and all grounds, as allowed under the law or in equity.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, the Trustee prays that the Court enter an order that (1) finds that the property underlying the avoidance actions such as alleged in this Complaint are property of the Debtor's Estate and that the Trustee is entitled to all recoveries under such avoidance actions; (2) requires Defendant WTP to turn over the Retainer Payment and Debtor Files to the Trustee; (3) grants judgment in favor of the Trustee in an amount not less than the Retainer Payment, interest from the date of the Retainer Payment, plus the costs and expenses of this action, including, without limitation, attorneys' fees; (4) requires Defendant WTP to turn over immediately to the Trustee the $50,000.00 paid to Defendant WTP by the Debtor; (5) awards the Trustee sanctions, punitive, consequential and exemplary damages in an amount of not less than $500,000.00; and (6) grants such other and further relief as is appropriate under the circumstances.

*/s/ John M. Simms*
ATKINSON, SIMMS & KERMODE, PLLC
1608 Harrodsburg Road
Lexington, Kentucky 40504
E-mail: jms@ask-law.com
Telephone:  (859) 225-1745
Fax:            (859) 254-2012

COUNSEL FOR THE CHAPTER 7 TRUSTEE,
JAMES R. WESTENHOEFER

15053432_1.docx